■ In the Matter of PETER VV., a Person Alleged to be in Need of Supervision, Appellant. CHERYL MARCEAU, Respondent.—Levine, J. Appeal from an order of the Family Court of Clinton County (Lewis, J.), entered February 2, 1990, which, in a proceeding pursuant to Family Court Act article 7, placed respondent in the custody of the Clinton County Department of Social Services.

Respondent was originally adjudicated as a person in need of supervision (hereinafter PINS) in May 1989 on a petition filed by school authorities and was placed on probation for one year, one of the conditions of which required regular attendance at school. In December 1989, a petition was filed alleging respondent's violation of probation arising out of his refusal to attend school. Respondent was found to have violated the terms of the prior order of probation following a January 3, 1990 fact-finding hearing. The dispositional hearing on respondent's violation was held January 19, 1990. After hearing testimony from a senior caseworker from the Clinton County Department of Social Services, respondent's probation officer and the administrator for student discipline at the school respondent had most recently attended, Family Court placed respondent with the County Department of Social Services for one year for actual placement at Berkshire Farms, a voluntary (private) residential treatment facility. This appeal followed.

Respondent's first ground for reversal is that Family Court's order of placement was not based upon a preponderance of the evidence (see, Family Ct Act § 745 [b] ). Specifically, respondent claims that the evidence explains his absence from the school in December 1989 as resulting from the emotional and physical trauma he suffered upon being violently ejected from the home of his father and stepmother in November 1989. His custody was transferred from his mother to his father shortly after the original PINS adjudication. Respondent also claims that his regular school attendance between the probation violation hearing and the dispositional hearing demonstrates that a residential placement was not necessary. In our view, however, the evidence adduced at the hearings overwhelm-

ingly supported Family Court's disposition in respondent's case.

Respondent's own testimony at the probation violation hearing negated any inference that his truancy was due to the aftereffects of his confrontation with his father. Respondent's mother, with whom he lived both before and after the period in his father's custody, conceded that she was not capable of ensuring that respondent would attend school, and expressed fear that respondent was preparing to run away. It was also established at the dispositional hearing that, during the eight days respondent attended school between the two hearings herein, he was cited for five violations of school disciplinary rules. Professional opinions were given at the dispositional hearing that respondent was dysfunctional in a normal school setting, would revert to truancy and school misbehavior as soon as he felt any lessening of the threat of immediate placement, and needed the structure and specialized educational and mental health treatment resources offered at a facility such as Berkshire Farms. Respondent failed to avail himself of the opportunity to rebut any of the foregoing evidence favoring placement by declining to testify at the dispositional hearing. There was a full review of all reasonable dispositional alternatives at the dispositional hearing and the evidence clearly established that the placement Family Court ordered was the least restrictive effective disposition and was best suited to meet respondent's particular psychological and educational service needs (see, Matter of Jose B. v City of New York, 71 AD2d 551, 552; Matter of Andre L., 64 AD2d 479, 481-482).

Alternatively, respondent argues that he was denied effective assistance of counsel because, at the completion of the dispositional hearing, respondent's Law Guardian acknowledged a conflict between respondent's wishes and what the Law Guardian perceived as respondent's needs for the "structure and resources available in placement". It is true that, ordinarily, a Law Guardian representing an adolescent child in a PINS proceeding should advocate not only for the needs of the child but for that child's wishes (see, Matter of Sandra XX., 169 AD2d 992 [decided herewith] ). The statement by the Law Guardian objected to, however, must be reviewed in the context of his representation of respondent throughout the proceedings herein. The Law Guardian vigorously advocated on respondent's behalf at both the probation violation hearing and the dispositional hearing by cross-examining petitioner's witnesses, subjecting both factual and opinion evidence to

intense scrutiny, and presenting the only evidence having any tendency to excuse respondent's truancy. As a practical matter, however, the possibility of avoiding placement was effectively foreclosed by respondent's apparently unwavering obstinacy regarding school attendance, shown from the beginning of the proceedings through his personal decision not to testify at the dispositional hearing. There simply was no evidence in the record that would have supported a less restrictive alternative disposition here. Accordingly, in light of the Law Guardian's otherwise strong advocacy on respondent's behalf, his failure to urge an alternative disposition unsupported by the evidence does not establish that respondent was denied the effective assistance of counsel. On the basis of the record as a whole, we find that respondent received meaningful representation (see, People v Baldi, 54 NY2d 137).

Order affirmed, without costs. Casey, J. P., Mikoll, Yesawich, Jr., Levine and Mercure, JJ., concur.